1   Larry W. Lee (SBN 228175)
2   lwlee@diversitylaw.com
    **DIVERSITY LAW GROUP, P.C.**
3   515 S. Figueroa St., Suite 1250
4   Los Angeles, CA 90071
    (213) 488-6555
5   (213) 488-6554 facsimile

6   Attorneys for Plaintiff and the Class
7   *ADDITIONAL COUNSEL ON NEXT PAGE

8               **UNITED STATES DISTRICT COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10  LORENA ALVAREZ, individually       Case No. 8:19-cv-02253-MCS-KESx
    and on behalf of all others similarly
11  situated,

12              Plaintiff,             **PLAINTIFF'S NOTICE OF MOTION
                                       AND MOTION FOR FINAL
13      vs.                            APPROVAL OF CLASS ACTION
                                       SETTLEMENT; AND
14  AMERISOURCEBERGEN DRUG             MEMORANDUM OF POINTS AND
    CORPORATION, a Corporation; and    AUTHORITIES IN SUPPORT
15  DOES 1 through 50, inclusive,      THEREOF**

16
17              Defendants.            Date:        June 7, 2021
18                                     Time:        9:00 a.m.
                                       Courtroom:   7C
19                                     Judge:       Hon. Mark C. Scarsi
20
21
22
23
24
25
26
27
28

# ADDITIONAL COUNSEL

Edward W. Choi (SBN 211334)
edward.choi@choiandassociates.com
**LAW OFFICES OF CHOI & ASSOCIATES**
515 S. Figueroa St., Suite 1250
Los Angeles, CA 90071
Telephone: (213) 381-1515
Facsimile: (213) 465-4885

Dennis S. Hyun (SBN 224240)
dhyun@hyunlegal.com
**HYUN LEGAL, APC**
515 S. Figueroa St., Suite 1250
Los Angeles, California 90071
(213) 488-6555
(213) 488-6554 facsimile

William L. Marder (SBN 170131)
bill@polarislawgroup.com
**POLARIS LAW GROUP**
501 San Benito Street, Suite 200
Hollister, CA 95023
Telephone: (831) 531-4214
Facsimile: (831) 634-0333

Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**
**CASE NO. 8:19-CV-02253-MCS-KESX**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that at 9:00 a.m. on June 7, 2021, or as soon thereafter as the matter may be heard in Courtroom 7C of the United States District Court for the Central District of California, First Street Courthouse, located at 350 W. 1st Street, Los Angeles, California 90012, will and hereby does move this Court for an Order finally approving the proposed class action settlement. Specifically, Plaintiff respectfully requests that the Court issue an Order granting final approval of the proposed class action settlement.

Given that this is a Motion for Final Approval of a Settlement reached with Defendant AmerisourceBergen Drug Corporation ("Defendant") (Defendant and Plaintiff are collectively referred to as the "Parties"), Plaintiff does not anticipate that Defendant will oppose this Motion.

This Motion is based upon this Notice of Motion and Motion for Final Approval of Class Action Settlement, the attached Memorandum of Points and Authorities in Support Thereof, the accompanying Declarations of Larry W. Lee, Edward W. Choi, Dennis S. Hyun, William L. Marder, and Nathalie Hernandez of ILYM Group, Inc., any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED:  May 10, 2021          LAW OFFICES OF CHOI & ASSOCIATES

By:   /S/ Edward W. choi
      Edward W. Choi, Esq.
      Attorney for Plaintiff and the Class

# **TABLE OF CONTENTS**

I.   INTRODUCTION .........................................................................................1

II.  THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO AND SUCCESSFULLY CARRIED OUT ................................................1

    A.   Dissemination of Notice ............................................................1

    B.   No Objections Have Been Filed To Date and Three Exclusions Have Been Requested .......................................................................2

III. OVERVIEW OF ISSUES AND ARGUMENT ...........................................2

IV. LITIGATION HISTORY AND INVESTIGATION ...................................4

    A.   Factual Allegations ....................................................................4

    B.   Procedural Background ..............................................................5

         a. Summary of the Litigation…………………………………5

         b. Summary of the Investigation and Discovery……………..5

V.  THE SETTLEMENT ...............................................................................6

VI. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL ..............................................................................................7

    A.   The Strength of Plaintiff's Case Supports Settlement .......................7

    B.   Risks, Expense, and Duration of Continued Litigation Supports Settlement .................................................................................8

    C.   The Settlement Amount Favors Settlement ...................................8

    D.   The Extent of Investigationy Favors Settlement..............................10

    E.   The Recommendations of Counsel Favor Approval of the Settlement ...............................................................................11

    F.   The Class Has Responded Favorably to the Proposed Settlement ...12

    G.   The Procedure Through Which the Settlement Was Achieved Supports Final Approval............................................................12

VII. CONCLUSION ......................................................................................14

i

1

## **Table of Authorities**

2

**Page**

3

**Federal Cases**

4

5

*Armstrong v. Board of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) ............................11

6

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610 (N.D. Cal. 1979) ...................................11

7

*Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848

8

   (N.D. Cal. 2010) ..............................................................................................7,12

9

*Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir .2004) ...........................12

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) ......................................7

10

*Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395

11

   (N.D. Cal. Oct. 22, 2014) ..........................................................................8, 11, 12

12

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15 (N.D. Cal. 1980) .......................11

13

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................7, 13

14

*In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454 (9th Cir.2000) ......................9, 11

15

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................12

16

*Joel A. v. Giuliani*, 218 F.3d 132 (2nd Cir. 2000) ..................................................7

17

*Kirkorian v. Borelli*, 695 F. Supp. 446 (N.D. Cal. 1988) ......................................11

18

*Larsen v. Trader Joe's Company*, No. 11-cv-05188-WHO, 2014 WL 3404531

19

   (N.D. Cal. July 11, 2014) ..................................................................................3

20

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ........................14

21

*Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ...8

22

*McKenzie v. Federal Express Corp.* (C.D. Cal. Case No. CV10-02420 GAF) ......10

23

*Officers for Justice*, 688 F.2d 615 (9th Cir. 1982) ...........................................12, 13

24

*Pallas v. Pacific Bell*, 1999 WL 1209495 (N.D. Cal. July 13, 1999) ....................12

25

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ...............................11

26

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................13

27

*Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395 (N.D. Cal.

28

   Jan. 29, 2016) ...................................................................................................3

ii

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ........................................11, 13

**State Cases**

*Merchant v. OfficeTeam* (Los Angeles Superior Court Case No. BC461652) ....... 10

**Statutes**

California Labor Code § 226 ....................................................................2, 3, 4, 5, 10

California Labor Code § 2698 ........................................................................ 3, 4, 5

**Other Authorities**

*Newberg on Class Actions*, Fourth Edition, vol. 4, §11.5 ............................... 8, 9, 13

*Manual for Complex Litigation* (Fourth) § 21.6 (2004) ........................................ 12

*Manual for Complex Litigation* (Fourth) § 30.42 (2004) ....................................... 13

**Rules**

FRCP 23 ..................................................................................................... 3, 5, 7

iii

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3    By this motion, Plaintiff Lorena Alvarez ("Plaintiff") seeks final approval of

4  a class-wide settlement reached between Plaintiff and Defendant

5  AmerisourceBergen Drug, a Corporation ("Defendant") (Defendant and Plaintiff

6  are collectively referred to as the "Parties").  On January 26, 2021, this Court

7  granted preliminary approval of this class action settlement.  (Docket No. 30).  The

8  Parties now seek this Court's final approval of the settlement.

9    The settlement requires Defendant to pay a total of Five Hundred Thousand

10  Dollars ($500,000.00), a sum which represents a substantial recovery for the

11  members of the Class.  **Again, this settlement is non-reversionary, such that no**

12  **monies will revert back to Defendant.**  Further, there was no claims process, such

13  that class members will automatically receive their payment so long as they did not

14  opt-out.  Class members were given an opportunity to object or opt-out of the

15  settlement.  There were **no objectors** and only **3 opt out** requests.  Accordingly,

16  this shows that the class members have reacted favorably to the settlement.  Thus,

17  all class members, who did not opt out, will automatically be issued a settlement

18  check. Moreover, all of this Court's orders concerning dissemination of Notice of

19  the Settlement have been scrupulously followed.

20    Based thereon, Plaintiff respectfully requests that final approval be granted in

21  its entirety.

22  ## II.    THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED

23  ##        TO AND SUCCESSFULLY CARRIED OUT

24    ### A.    Dissemination of Notice

25    As noted above, preliminary approval was granted on January 26, 2021.

26  (Docket No. 30).  Plaintiff provided the Notice to the Court-approved Settlement

27  Administrator, ILYM Group, Inc. ("Settlement Administrator").  The Parties,

28

1

1  through the work of the Settlement Administrator, have complied with this Court's

2  orders concerning dissemination of the class notice.  (Declaration of Nathalie

3  Hernandez for ILYM Group, Inc. ("Admin. Decl.") ¶¶ 4-14).

4      The Notice was mailed to the class of 563 individuals utilizing the data

5  provided by Defendant.  (Admin. Decl. ¶¶ 4-7).  Of those, 15 were returned and 1

6  notice was remailed to a forwarding address and 9 were remailed after updated

7  addresses were located through skip tracing. (*Id.* at ¶8).  The total number of

8  undeliverable Notices was 5. (*Id.*).  This represents a 99.11% notice success rate.

9      **B.  No Objections Have Been Filed To Date and Three Exclusions**

10     **Have Been Requested**

11     As of the date of this Motion, not a single individual has filed any objections

12  to this settlement, and only three individuals have requested to opt-out of the

13  current settlement resulting in a 99.47% participation rate, further evidencing the

14  favorable view of the settlement from class members.  (Admin. Decl. ¶¶ 11-13).

15  **III.   OVERVIEW OF ISSUES AND ARGUMENT**

16     As discussed in detail in the previously filed Motion for Preliminary

17  Approval (Docket No. 29), and briefly mentioned above, the class claim at issue in

18  this lawsuit arises out of Defendant's issuance of itemized wage statements (i.e.,

19  pay stubs), which every employer is required to do in California pursuant to Labor

20  Code § 226(a). Plaintiff alleges that as a matter of corporate policy, practice and

21  procedure, each and every wage statement issued by Defendant to the class

22  members did not show the accurate rate of overtime pay whenever overtime wages

23  were paid.  Instead, the overtime was identified on a different line item with some

24  line items showing the base rate of pay and other line items showing a rate of half

25  the base rate.  Further because of this problem, the total hours worked displayed on

26  the respective wage statements were inaccurate.  Specifically, whenever the

27  applicable hours are added up in each respective wage statement, it did not correlate

28

2

to the correct number of total hours worked during each pay period.  As a result of such conduct, Plaintiff asserts that the wage statements violated Labor Code § 226(a). As a result of such violations, Plaintiff alleged that Defendant was liable for penalties pursuant to Labor Code § 226(e) and Labor Code § 2698, *et seq*.

Defendant, however, strongly disagrees with Plaintiff's contentions and believes that Plaintiff's claims are without merit. In particular, Defendant contends that its wage statements are accurate and itemized and comply with the Labor Code Section 226's requirements.  Defendant further contends that Plaintiff's claims do not meet the requirements for class certification under Rule 23 and may not be pursued on a representative basis under the PAGA.  Further, to the extent that any appeals would have to be taken, Plaintiff and the Class would not have received any compensation from this case until such appeals were exhausted and assuming that the appeal was decided in Plaintiff's favor. Therefore, Plaintiff and the Class would have faced substantial risk in proceeding with the litigation had a settlement not been reached.

Further, as a result of this lawsuit, Defendant has changed their wage statement practices to address the issue asserted in this case. Namely, Defendant's began rolling out corrected wage statements to employees starting on February 21, 2020. (Declaration of Edward Choi ("Choi Decl." ¶12). Thus, Defendant's change in their wage statement practices supports approval of this settlement. *See* S*mith v. Am. Greetings Corp*., No. 14-CV-02577-JST, 2016 WL 362395, at *8 (N.D. Cal. Jan. 29, 2016) (in granting final approval of wage and hour class action settlement, court noted that "class counsel's efforts have remedied many of the corporate policies that led to this lawsuit"); *Larsen v. Trader Joe's Company*, No. 11-cv-05188-WHO, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (same). Thus, in addition to the financial benefits of the monetary, non-reversionary settlement, Defendant has also changed their wage statements to moot the issue raised in this

3

lawsuit prospectively.

The negotiations were hard fought and contentious. As a result thereof, the parties have reached the current settlement, which provides for a total settlement sum of Five Hundred Thousand Dollars ($500,000.00), inclusive of payments to settlement class members, class representative service payment, attorneys' fees and costs, payment to the State of California, and administration costs.

## IV.    LITIGATION HISTORY AND INVESTIGATION

### A. Factual Allegations

On November 19, 2019, Plaintiff filed her Complaint for violation of California Labor Code §226 in the United States District Court. On January 22, 2020, Plaintiff filed a First Amended Complaint adding a cause of action for violation of the Private Attorneys General Act (the "PAGA"), California Labor Code § 2698, *et. seq.* ("Operative Complaint" or "Action"). Plaintiff's Operative Complaint brought the Action on behalf of herself, other allegedly aggrieved employees and as proxy for the State of California, and the following individuals:

> "All of Defendant's past and present non-exempt California employees who worked for Defendant and were paid any overtime wages, at any time from November 19, 2018, through the present."

The Action asserts claims for statutory damages, civil penalties under the PAGA, interest, attorneys' fees, and costs. Prior to filing this Action, Plaintiff sent notice of alleged Labor Code violations to the Labor Workforce Development Agency (the "LWDA") pursuant to Labor Code § 2699.3.

Plaintiff alleges that Defendant violated Labor Code §§226(a) because the wage statements issued do not show the accurate rate of overtime pay whenever overtime wages were paid. Instead, the overtime was identified on different line items with some line items showing the base rate of pay and other line items showing a rate of half of the base rate. Further, because of this problem, the total

4

hours worked displayed on the respective wage statements were inaccurate. Specifically, whenever the applicable hours are added up in each respective wage statement, it did not correlate to the correct number of total hours worked during each pay period.

On the other hand, Defendant contends that its wage statements are accurate and itemized and comply with Labor Code Section 226's requirements. Defendant further contends that Plaintiff's claims do not meet the requirements for class certification under Rule 23 and may not be pursued on a representative basis under the PAGA.

**B. Procedural Background**

*a. Summary of the Litigation*

On November 19, 2019, Plaintiff filed her Complaint for violation of California Labor Code §226 in the United States District Court. On January 22, 2020, Plaintiff filed a First Amended Complaint adding a cause of action for California Labor Code §2698, et. seq. On March 2, 2020, the Parties attended the Scheduling Conference.

The Parties subsequently agreed to private mediation and engaged in the same with well-respected mediator Jeff Ross on September 21, 2020. Defendant claims that the allegations have no merit and do not give rise to liability.

On January 26, 2021, this court granted Plaintiff's Motion for Preliminary Approval.

*b. Summary of the Investigation and Discovery*

The Parties have served their Initial Disclosures and engaged in an extensive meet and confer process regarding the data to perform a damage analysis and engage in a meaningful mediation. In connection with initial disclosures and exchange of documents, Plaintiff obtained and reviewed Defendant's document production, including policy documents and revised, corrected wage statements that

5

the Defendant rolled out to employees starting on February 21, 2020.

## V.     THE SETTLEMENT

The Settlement terms were summarized in detail in the Motion for Preliminary Approval, and Plaintiff respectfully incorporates those arguments herein so as to avoid unnecessary duplication. The specific terms of the settlement are set forth in the Settlement Agreement filed on January 19, 2021.  (Docket No. 29). The principal terms are:

a.     Defendant will pay a total Settlement Amount of $500,000.00.  This sum includes payments made to the settlement class members, settlement administration costs, Class Representative service payment, awards of attorneys' fees and costs.

b.     The sum available for use for payments to class members after the settlement administration costs, and awards of attorneys' fees and costs as the Net Settlement Amount.  Defendant agree that it shall pay the entirety (100%) of the Net Settlement Amount.  **In other words, the settlement is non-reversionary, meaning that no funds will revert back to Defendant.**

c.     No claim forms were necessary for any class member to participate in the settlement and receive their share of the settlement.  Thus, any class member who did not opt-out in connection with this settlement notice will automatically receive his/her share of the settlement proceeds.  On average, each class member will receive approximately a payment of $478.70, with the highest payment being $747.37.

d.     All of this Court's orders in connection with the settlement administration process have been followed.  (*See generally* Admin. Decl. filed herewith).

The settlement represents a compromise between the positions and evaluations of the two sides to this controversy. Clearly, there were significant

disagreements between the Parties as to the facts and the law.

## VI. THE SETTLEMENT EXCEEDS THE STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval.  The court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2nd Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The fairness, reasonableness and adequacy of any class action settlement depends on "the relative strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; ... and the reaction of class members to the proposed settlement." *Hanlon* 150 F.3d at 1026.  Here, as set forth in the Motion for Preliminary Approval and discussed below, the factors for final approval of this settlement have been established.

### A. The Strength of Plaintiff's Case Supports Settlement

This factor is generally satisfied when plaintiffs must overcome barriers to make their case. *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).  As noted above, while Plaintiff believes that the class could be certified and that there is ample case law to support Plaintiff's contentions in this matter, there was no guarantee. As noted by the Court in its Order Granting

7

Preliminary Approval, "Plaintiff would face significant obstacles not only with certifying the class but also surviving summary judgment on all claims and ultimately prevailing at trial." (Docket No. 30 at 7).

Therefore, this factor favors settlement.  See *Dyer v. Wells Fargo Bank, N.A.*, 2014 WL 5369395, at *3 (N.D. Cal. Oct. 22, 2014) (factor favors final approval where "[p]laintiffs acknowledge that, if the settlement is not approved, they will encounter significant obstacles in establishing their claims"); see *also Moore v. Verizon Commc'ns Inc.*, 2013 WL 4610764, at *5 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in proving liability and damages).

## B. Risks, Expense, and Duration of Continued Litigation Supports Settlement

"Difficulties and risks in litigating weigh in favor of approving a class settlement."  *Dyer*, 2014 WL 5369395, at *3 (citation omitted).  Briefing on class certification, liability and damages, including with respect to any anticipated Motion for Summary Judgment, as well as preparation for trial would have been time-consuming and expensive.  Moreover, Plaintiff acknowledges that there was a significant risk that Plaintiff would recover nothing for herself and the Class after further protracted litigation. Thus, the risks, expense, and duration of continued litigation favor final approval of the settlement. *See Dyer*, 2014 WL 5369395, at *3 ("This factor supports final approval of this settlement because, without a settlement, Plaintiffs would risk recovering nothing after a lengthy and costly litigation.").

## C. The Settlement Amount Favors Settlement

The standard of review for class settlements is whether the Settlement is within a range of reasonableness.  As Professor Newberg comments:

"Recognizing that there may always be a difference of

8

1

2

3

4

> opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness.… "

5   4 Newberg on Class Actions, at §11.45.

6   Numerous courts have held that **gross** settlements approximating between

7   only 8 and 25% of the defendant's potential exposure are fair and reasonable.  *See*,

8   *e.g.*, *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir.2000) (holding

9   that class action settlement recovering 16% of potential exposure was fair and

10   reasonable; "[i]t is well-settled law that a cash settlement amounting to only a

11   fraction of the potential recovery does not per se render the settlement inadequate or

12   unfair.  Rather, the fairness and the adequacy of the settlement should be assessed

13   relative to risks of pursuing the litigation to judgment"; noting that whether the

14   settlement is fair and adequate depends on the "the difficulties in proving the

15   case"); *Bellinghausen v. Tractor Supply Co.*, No. 13-CV-02377-JSC, 2015 WL

16   1289342, at *6 (N.D. Cal. Mar. 20, 2015) (holding that class action settlement

17   recovering between 8.5% and 25% of the defendant's potential exposure was fair).

18   Here, the settlement is approximately 12.44% of the estimated potential

19   recovery.  (Choi Decl. ¶5).  As noted by the Court in its Order Granting Preliminary

20   Approval, "the Court finds that after balancing the expected recovery against the

21   value of the settlement, the settlement falls within the range of possible approval."

22   (Docket No. 30 at 8).  The settlement fund is non-reversionary, such that 100% of

23   the Net Settlement Amount will be available for distribution to class members who

24   do not opt-out.  Moreover, the settlement did not require claim forms.  Rather, class

25   members who did not opt-out will receive a check.  Further, the settlement fund

26   will be paid out entirely in cash (as opposed to a voucher, coupon, etc.).  In

27   addition, as set forth in the Settlement Agreement, the class release is expressly

28

9

limited to the class and representative claims asserted in this case.

Moreover, courts have acknowledged that, even if the court has concerns about the class recovery, the lack of objection to the recovery by the class weighs in favor of finding that the settlement amount is fair and reasonable. *See Chun-Hoon*, 716 F. Supp. 2d at 851. In *Chun-Hoon*, although the court had concerns about the adequacy of the settlement during preliminary certification, the lack of objection to the settlement aided the court in determining that the settlement was beneficial to the class. *Id*. Here, not a single objection was filed.

Finally, in comparison to other class action cases based purported violations of Labor Code §226, the current Settlement is well above the prior approved settlements. For example, in *Merchant v. OfficeTeam* (Los Angeles Superior Court Case No. BC461652), the average value per wage statement was $10 per wage statement ($1,500,000 divided by 147,610 wage statements). (Declaration of Edward W. Choi ¶5). In *McKenzie v. Federal Express Corp.* (C.D. Cal. Case No. CV10-02420 GAF), the average value per wage statement was $17.00 ($8,250,000 divided by 484,928 wage statements). (*Id.*) In the present case, the average value per wage statement is approximately $42.90 per wage statement ($500,000 divided by 11,653 wage statements). (*Id.*) Thus, the value of the Settlement in this case is more than other class actions that were approved by the various courts.

As such, this settlement should be viewed favorably.

**D. The Extent of Investigation Favors Settlement**

The Parties have served their Initial Disclosures and engaged in an extensive meet and confer process regarding the data to perform a damage analysis and engage in a meaningful mediation. (Choi Decl. at ¶11). In connection with initial disclosures and exchange of documents, Plaintiff obtained and reviewed Defendant's document production, including policy documents and revised, corrected wage statements that the Defendant rolled out to employees starting on

10

1  February 21, 2020.  (*Id*. at ¶12).

2         Courts have held that such discovery is sufficient for parties to make an

3  informed decision regarding the adequacy of the settlement.  *See, e.g.*, *Chun-Hoon*,

4  716 F. Supp. 2d at 848 (" true value of the class claims is well-known and class

5  counsel possess a sufficient understanding of the issues involved and the strengths

6  and weaknesses of the case"); *see also In re Mego Fin. Corp. Sec. Litig*., 213 F.3d

7  454, 459 (9th Cir. 2000) (formal discovery not necessary where the parties have

8  sufficient information to make an informed decision about settlement).

9         **E.  The Recommendations of Counsel Favor Approval of the Settlement**

10        The recommendations of experienced counsel should be given considerable

11  weight.  *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v.*

12  *Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980),  ("[T]he fact that

13  experienced counsel involved in the case approved the settlement after hard-fought

14  negotiations is entitled to considerable weight."); *Kirkorian v. Borelli*, 695 F. Supp.

15  446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp*., 703 F.2d 170, 175 (5th

16  Cir. 1983); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983), *Armstrong*

17  *v. Board of Sch. Dirs*., 616 F.2d 305, 325 (7th Cir. 1980).

18        Lead counsel for Plaintiff has broad experience litigating employment class

19  actions.  (Lee Decl. ¶¶ 10-12; Hyun Decl. ¶¶ 3-6; Choi Decl. ¶20; Marder Decl. ¶ 4-

20  9).  They support this settlement as a fair and reasonable settlement which is in the

21  best interest of the settlement class.  (Lee Decl. ¶3; Hyun Decl. ¶¶ 7-9; Choi Decl.

22  ¶¶11-17; Marder Decl. ¶ 3).  As noted by the Court in its Order Granting

23  Preliminary Approval, "[t]he Court therefore finds Alvarez and class counsel

24  protect the interests of the class." (Docket No. 30 at 5).  Therefore, this factor

25  favors approval of the settlement.  *See Dyer*, 2014 WL 5369395, at *3

26  (recommendation of plaintiffs' counsel supports approval of settlement); *Chun-*

27  *Hoon*, 716 F. Supp. 2d at 848 (same).

28

11

### F. The Class Has Responded Favorably to the Proposed Settlement

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that" the settlement is favorable to class members. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008), *see Pallas v. Pacific Bell*, 1999 WL 1209495, at *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness.").

Here, not a single objection was filed. Further, only three individuals have opted out of this settlement. (Admin Decl. at ¶13). In other words, this settlement has almost a 99.47% participation rate and not a single objection. (*Id.* at ¶14). Thus, the lack of any objections and opt-outs strongly support the fairness of the settlement. *See Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir .2004) (approving settlement with 45 objections and 500 opt-outs from a 90,000-person class, representing .05% and .56% of the class, respectively); *Dyer*, 2014 WL 5369395, at *4 (strong support from class in favor of approving settlement where only three of 8,695 class members opted out); *Chun–Hoon*, 716 F. Supp. 2d at 852 (where 16 of 329 class members opted out, court found that positive class reaction "strongly supports settlement").

### G. The Procedure Through Which the Settlement Was Achieved Supports Final Approval

The Ninth Circuit has recognized that the factors to be examined at final approval may differ depending on the circumstance of each case. *Officers for Justice*, 688 F.2d 615, 625 (9th Cir. 1982) . Therefore, although not one of the Officers for Justice listed factors, the procedures by which the settlement was achieved also strongly support the fairness of the settlement. *See Chun-Hoon*, 716 F. Supp. 2d at 851 ("To these factors, the court adds as a ninth factor to consider the procedure by which the settlement was arrived at"), citing *Manual for Complex*

12

*Litigation* (Fourth) § 21.6 (2004).  As noted above, the parties participated in an arm's-length negotiation, facilitated by a professional mediator with significant class action experience.  This weighs in favor of approval of the settlement.  *See Chun-Hoon*, 716 F. Supp. 2d at 851 (finding that use of formal arm's-length mediation supported approval of settlement agreement).

Further, the Ninth Circuit has shown longstanding support of settlements reached through arms' length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp*., 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id*. at 965, citing *Hanlon*, 150 F.3d at 1027.  The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral, both of which factors are present here.

The *Rodriguez* Court "put a good deal of stock in the product of an arms' length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be tested." *Rodriguez*, 563 F.3d at 965 (citations omitted).  As the Court explained, "[i]n reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id*. at 965 (citations omitted).  *See also Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir.1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); 2 *Newberg on Class Actions* § 11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) § 30.42).

The proposed settlement has no deficiencies.  There is no standard or benchmark for determining whether any given settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil*

13

*Service Comm'n of City and. County of San Francisco*, 688 F.2d 615, 625 (9th. Cir. 1982) (citation omitted).  In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements").  As noted by the Court in its Order Granting Preliminary Approval,  "the Court finds that after balancing the expected recovery against the value of the settlement, the settlement falls within the range of possible approval."  (Docket No. 30 at 7).

The settlement has been reached after considerable investigation, litigation, negotiation, and involving the mediation efforts of a highly experienced mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this settlement represents a responsible means of addressing the claims of Plaintiff and the Class, as well as Defendant's contention that it would prevail on the merits.

## VII.   CONCLUSION

The parties have reached this settlement following extensive litigation, ongoing case discussions and arms-length negotiations. Plaintiff respectfully requests that the Court:

1. Grant final approval of the proposed settlement;

2. Order payment from the settlement proceeds to the Settlement Administrator in compliance with the Settlement Agreement;

3. Grant the contemporaneously pending Motion for Award of Attorneys' Fees, Costs;

4. Enter the proposed Final Approval Order and Final Judgment submitted herewith; and

14

1      5.      Retain continuing jurisdiction over the implementation, interpretation,

2  administration and consummation of the settlement.

3

4  DATED:  May 10, 2021          LAW OFFICES OF CHOI & ASSOCIATES

5
                               By:   /S/ Edward W. Choi
6                                    Edward W. Choi, Esq.
                                     Attorney for Plaintiff and the Class
7